### Order

## A. B. v. C. B.

*Delbert T. Kirk*, for libellant.

*Alfred M. Klein*, for respondent.

LEVINTHAL, J., February 4, 1944.—This is a rule to amend a libel in divorce. Libellant prays leave to amend his libel by including therein averments to the effect that respondent fraudulently concealed from and failed to disclose to libellant that respondent's maternal grandmother was, and her mother is now, afflicted with dementia præcox, an inheritable mental disease, and that respondent herself has, and any children hereafter born to her would have, an hereditary tendency to become a victim of the same disease.

Respondent contends that the proposed amendment does not set forth a valid ground for divorce and therefore should not be allowed.

In passing on this question, the following propositions, all of which are clearly established in our law, should be preliminarily noted:

1. A fraudulent concealment of a material fact is equivalent to a representation that such fact does not exist and may constitute fraud.

2. Fraud is a statutory ground for a divorce in Pennsylvania: The Divorce Law of May 2, 1929, P. L. 1237, sec. 10(*g*), 23 PS §10(*g*).

3. The word "fraud" as used in our Divorce Law does not have the same meaning as "fraud" in connection with ordinary contracts. The fraud referred to in our statute must be such as would render a marriage void at common law. To be considered as a ground for

divorce the fraud must be in the essentialia of the contract: Allen's Appeal, 99 Pa. 196, 199 (1881).

4. The authorities do not lay down any rule which can sharply define and distinguish what are and what are not essentialia. "Every case must, to some extent, depend on its own circumstances": Allen's Appeal, supra, at page 200.

5. It is well established that such things as the name, rank, fortune, health, or character of a prospective spouse are not regarded as being "essentialia" of the marriage relation, and misrepresentations with respect thereto have been held not to constitute such fraud as would invalidate a marriage: 38 C. J. 1302, sec. 64; Ayres v. Ayres, 64 Pitts. L. J. 724 (1916). The underlying reason for this conclusion is that in a contract of marriage the parties take each other for better, for worse, for richer, for poorer, to cherish each other in sickness and in health. Consequently, a mistake, whether resulting from accident, or even from fraudulent practices in respect to character, fortune, health, or the like does not render the marriage void: Bishop on Marriage, Divorce and Separation, 195, 196, sec. 459-60.

In view of these principles, the issue in this case narrows itself to a consideration of this question: Does an alleged misrepresentation with respect to a taint of insanity in the family tree of respondent, coupled with an allegation that the effect of such taint is to cause respondent herself, and any offspring which may be born of the marriage, "to have a tendency to become a victim of this inheritable form of insanity", go to the essentialia of the marriage relationship?

In Ayres v. Ayres, supra, the court held that a representation that libellant's father was dead when, in fact, he was an inmate of an insane asylum was not such fraud as would justify a divorce. This case, however, did not involve precisely the same issue as here pre-

sented, because in the Ayres case there was absent any allegation as to the nature of the insanity or any showing that it was of a type transmissible through heredity. But we do not think that these additional factors in this case require us to reach a different conclusion.

Research has failed to reveal any case either in Pennsylvania or elsewhere in which it has been held that such misrepresentations as here alleged warrant a decree of divorce. Although this, of course, is not conclusive, it affords some evidence that such matters have heretofore not been regarded as of the essentialia of the marriage relation.

It is interesting to note that the legislature, in the Act of July 24, 1913, P. L. 1013, 48 PS §13, provided that a license to marry shall be refused when one of the contracting parties is afflicted with a transmissible disease, or is an imbecile, epileptic, or of unsound mind. Our legislature, however, has authorized no inquiry as to whether the parents or grandparents of either of the said parties were so afflicted, nor as to whether one of the contracting parties has an hereditary tendency to become a victim of such disease. Perhaps this is because, fortunately for the welfare of human society, the laws of heredity are not so settled and definite that it can be said with any degree of certainty that the fact that a progenitor was afflicted with a transmissible disease will necessarily, or even probably, result in its being handed down from generation to generation.

All of this impels us to the conclusion that when a prospective bride is, at the time of the marriage, actually free from disease, a concealment of the taint of insanity in her progenitors, even if it be coupled with the hereditary possibility that the wife and future offspring of the marriage may become so afflicted in the future, does not go to the essentialia of the marriage relation. The possibility of the further transmission of such disease must be regarded as one of the risks the

husband, despite the absence of a disclosure of the facts, voluntarily assumed when, in the words of the marriage ceremony, he took his bride "for better or for worse".

In the unreported case of Thorp v. Thorp, decided by Court of Common Pleas No. 4 of Philadelphia County, as of June term, 1933, no. 8027, the court passed upon a question in some respects similar to that involved in the present case. There, the master in his report recommended the entry of a divorce decree on the ground that concealment of respondent's personal antenuptial insanity constituted such fraud as warranted a dissolution of the marriage. President Judge Finletter rejected this recommendation. Although the marriage was annulled on the ground that the evidence required a finding that respondent was actually so insane at the time of its celebration as not to have capacity to marry, it is clear from the context of the court's opinion that if respondent had been sane at the time of the marriage ceremony her failure to disclose her prior antenuptial insanity would not have been held to be such fraud as to warrant a divorce. We are of the same opinion.

It would seem obvious that if a concealment of a prior insanity of one of the contracting parties does not affect the essentialia of the marriage relationship, a fortiori, the concealment of the insanity of parents and grandparents cannot be given any such effect.

The rule to further amend the libel is discharged.